UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                          Bankruptcy No. 08-30526
                                                                Chapter 7
Karla Y. Fandrich,

                        Debtor.
_____/

**MEMORANDUM AND ORDER**

This case is before the Court on the chapter 7 trustee's objection to the claimed exemptions of Debtor Karla Y. Fandrich. On May 29, 2008, Debtor filed a voluntary chapter 7 bankruptcy petition. On her Schedule C, Debtor claims her one-half interest in checking and savings accounts owned jointly with her non-debtor husband as exempt under N.D.C.C. §§ 28-22-18 and 32-09.1-03. Debtor lists the value of the claimed exemption in the checking account as $1,000.00 and the value of the claimed exemption in the savings account as $1,000.00. The trustee filed an objection to Debtor's claimed exemptions on August 8, 2008. The matter was heard on September 17, 2008.

Debtor works at the Red Baron Lounge and the Maple River Winery. She is paid hourly at both jobs and deposits her paychecks into the checking account. At the hearing, Debtor provided documents signed by each of her employers detailing her wages for the six months prior to her bankruptcy. Debtor also provided copies of checks and deposit slips for the checking account. Debtor's husband's paychecks are automatically deposited into the checking account.

On the date of Debtor's bankruptcy filing, May 29, 2008, the balance in the checking account was $476.25. The last deposit into the checking account prior to Debtor's bankruptcy filing was for $532.00 on May 24, 2008. Debtor testified that the handwriting on the deposit slip is her husband's and that she does not know the source of the funds for the deposit. This account also accrues interest.

The balance in the savings account on the date of filing was $5,135.39.  Of the amount in the savings account, $4,154.00 was from a joint tax refund deposited on May 27, 2008.  Debtor testified that the money in the savings account, aside from the tax refund, came from the couple's checking account.  She stated that she transfers money from the checking account to the savings account whenever there is a couple hundred extra dollars in the checking account after bills have been paid.  For example, on February 28, 2008, Debtor transferred $200.00 from the checking account to the savings account; on March 21, 2008, $300.00; and on April 16, 2008, $500.00.  The savings account also earns interest.

Section 541(a)(1) of the Bankruptcy Code provides that, at the commencement of a case, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property."  11 U.S.C. § 541(a)(1).  The Code allows debtors to exempt certain property from the bankruptcy estate.  11 U.S.C. § 522(b)(1).  Exempt property is excluded from property of the estate available to satisfy debts.  Benn v. Cole (In re Benn), 491 F.3d 811, 813 (8th Cir. 2007).  Section 522(b)(2) authorizes states to opt out of the federal scheme of property exemptions enumerated in section 522(d).  Exercising this grant of authority, North Dakota enacted its own set of property exemptions for purposes of bankruptcy, limiting its residents to claiming the state exemptions rather than the federal exemptions.  See N.D.C.C. § 28-22-17.  Exemption statutes are construed liberally in favor of the debtor.  Wallerstedt v. Sosne (In re Wallerstedt), 930 F.2d 630, 631 (8th Cir. 1991).  The trustee has the burden of showing that an exemption is not properly claimed.  Fed. R. Bankr. P. 4003(c).

At the hearing, Debtor asserted that she may properly claim $980.00 –  approximately the amount remaining after subtracting the amount of the tax refund – in the savings account as exempt wages.[1]  She also asserted that she may exempt her one-half interest in the $4,154.00 tax refund that

---

[1] $5,135.39 (balance on the date of filing) minus $4,154.00 (tax refund) = $981.69.

2

was deposited into the savings account as wages, as well as the $450.00 balance from the checking account.[2]

To clarify the amounts at issue in this case, Debtor's interest in the account balances – like her interest in the tax refund – is a one-half interest as asserted by the trustee at the hearing and acknowledged by Debtor in her schedules. Indeed, Debtor also acknowledged at the conclusion of the hearing that she only seeks to exempt her one-half interest in each of the accounts. The amounts at issue, therefore, are $490.85 in the savings account (excluding the tax refund amount),[3] $238.13 in the checking account,[4] and $2,077.00 from the tax refund.[5]

Debtor claims these exemptions as wages under N.D.C.C. §§ 28-22-18 and 32-09.1-03. Section 28-22-18 provides that "[t]he wages of a debtor are exempt from all process or levy only to the extent provided in section 32-09.1-03." Section 32-09.1-03 provides in relevant part:

> 1. The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment may not exceed the lesser of:
>    a. Twenty-five percent of disposable earnings for that week.
>    b. The amount by which disposable earnings for that week exceed forty times the federal minimum hourly wage . . . or any equivalent multiple thereof prescribed by regulation by the secretary of labor in case of earnings for any pay period other than a week, in effect at the time the earnings are payable.

"Earnings" is defined in relevant part as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic

---

[2] The balance on the date of filing was actually $476.25.

[3] $981.69 ÷ 2 = $490.85.

[4] $476.25 ÷ 2 = $238.13.

[5] $4,154.00 ÷ 2 = $2,077.00.

3

payments pursuant to a pension or retirement program." N.D.C.C. § 32-09.1-01. "Wages" is not defined in chapter 28-22 of the North Dakota Century Code. It is therefore given its plain, ordinary, and commonly understood meaning. Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Serv. Ltd., 2007 ND 135, ¶ 9, 737 N.W.2d 253 (citing N.D.C.C. § 1-02-02). Black's Law Dictionary defines "wage" as:

> Payment for labor or services, usu. based on time worked or quantity produced; specif., compensation of an employee based on time worked or output of production. • Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodging, payments in kind, tips, and any similar advantage received from the employer. An employer usu. must withhold income taxes from wages.

Black's Law Dictionary 1610 (8th ed. 2004). Section 32-09.1-03, N.D.C.C., limits the extent to which wages can be exempt, and uses the term "earnings" as defined in N.D.C.C. § 32-09.1-01. Wages are a specific form of earnings. N.D.C.C. § 32-09.1-01.

The Court will begin with the issue of whether Debtor's portion of the income tax refund is wages.[6] The Eighth Circuit Court of Appeals addressed a similar issue in Wallerstedt v. Sosne (In re Wallerstedt), 930 F.2d 630 (8th Cir. 1991). The debtors in In re Wallerstedt were entitled to state and federal income tax refunds when they filed for bankruptcy. 930 F.2d at 630. They listed the tax refunds as earnings partially exempt under the Missouri garnishment statute. Id. at 630-31. Acknowledging that the equities in many respects favored the debtors, the Eighth Circuit nevertheless held that the income tax refunds were not earnings and could not be exempted. Id. at 632. Although In re Wallerstedt involved Missouri state law, the Eighth Circuit was persuaded by

---

[6] The Court recently addressed this issue in an unpublished order in In re Harms, Bankr. No. 08-30068 (July 30, 2008).

4

the seminal case to address whether a tax refund constitutes "earnings" under federal law, Kokoszka v. Belford, 417 U.S. 642 (1974). Id.

In Kokoszka, the United States Supreme Court held that "earnings," as defined in the Consumer Credit Protection Act (CCPA) and protected from garnishment, does not include income tax refunds. 417 U.S. at 651. The Supreme Court held that the Congressional purpose for the CCPA was to regulate garnishment of a person's periodic payments of compensation to ensure that the wage earner was left with some funds each pay period to live on and support his or her family. Kokoszka, 417 U.S. at 651-52. The Supreme Court found that this protection of a person's periodic payments necessary for ongoing support was not intended to extend to tax refunds of a debtor in bankruptcy even though the asset "is traceable in some way to . . . compensation." Id. at 651. The Supreme Court approved the Second Circuit's ruling, stating:

> [S]ince a "tax refund is not the weekly or other periodic income required by a wage earner for his basic support, to deprive him of it will not hinder his ability to make a fresh start unhampered by the pressure of preexisting debt". . . . "Just because some property interest had its source in wages . . . does not give it special protection, for to do so would exempt from the bankrupt estate most of the property owned by many bankrupts, such as savings accounts and automobiles which had their origin in wages."

Id. at 648 (quoting In re Kokoszka, 479 F.2d 990, 997 (2d Cir. 1973)).

Other courts analyzing similar state garnishment statutes have held that once earnings have been withheld and paid to the government, the money changes form and is considered by the Internal Revenue Service to be taxes, rather than earnings, even if later refunded. See Manchester v. Annis (In re Annis), 232 F.3d 749, 752 (10th Cir. 2000) (citing the Internal Revenue Code for the proposition that any money withheld from earnings is "taxes" even if later refunded); In re Rangel, 317 B.R. 553, 555 (Bankr. D. Kan. 2004) (concluding that a tax refund constitutes a return of

5

"taxes" and not "earnings" and is, therefore, not entitled to an exemption for earnings under Kansas state law); In re Lancaster, 161 B.R. 308, 309 (Bankr. S.D. Fla.1993); In re Miles, 153 B.R. 72, 73-74 (Bankr. N.D. Okla. 1993); In re Orndoff, 100 B.R. 516, 519-20 (Bankr. E.D. Cal. 1989). The Court finds these cases persuasive.

In this case, Debtor's income tax refund was not in the form of periodic payments of compensation. To find Debtor's tax refund exempt because it is directly traceable to her wages would potentially expand the protections offered by N.D.C.C. § 28-22-18 to include virtually every asset owned by a debtor and funded by his or her wages – an absurd result clearly beyond the scope of the statute.

For these reasons, the Court adopts Kokoszka's narrow interpretation of what funds constitute earnings and holds that a tax refund does not qualify as "earnings" under N.D.C.C § 32-09.1-03. Because wages are a specific form of earnings, the Court further holds that a tax refund likewise does not qualify as "wages" under N.D.C.C. § 28-22-18. The trustee's objection to Debtor's claimed exemption in her one-half interest in the tax refund is sustained.

With regard to Debtor's one-half interest in the joint savings and checking accounts, the trustee argued that a debtor cannot track wages forever and that at some point wages turn into other assets and lose their character as wages. Specifically, the trustee suggested that after wages are in a bank account two or three weeks, they are no longer wages.

As a starting point, the Court emphasizes that statutorily exempt funds – whether wages or otherwise – do not lose their exempt status solely by virtue of deposit into a personal bank account. See, e.g., In re Arnold, 193 B.R. 897 (Bankr. W.D. Mo. 1996) ("[i]t elevates form over substance to claim that the [paycheck in debtor's] hand was wages, but the check in his checking account was

6

not"); In re Caslavka, 179 B.R. 141, 147 (Bankr. N.D. Iowa 1995) (construing Iowa law that "protection afforded by the exemption would be rendered meaningless if exempt status is lost by negotiating the paycheck"); In re Kobernusz, 160 B.R. 844, 847 (D. Colo. 1993) (earnings do not lose their identity as earnings when deposited in bank account); see also In re Ladd, 258 B.R. 824 (Bankr. N.D. Fl. 2001) (exempt 401(k) proceeds retained their exempt status despite being deposited into a checking account); In re Bresnahan, 183 B.R. 506 (Bankr. S.D. Ohio 1995) (Ohio's exemption of a debtor's right to receive a payment under any pension plan applies to the payment when received and deposited in a bank account) (citing Daugherty v. Cent. Trust Co., 504 N.E.2d 1100, 1103 (1986) (Ohio's exemption for personal earnings applies to funds received as earnings and deposited in debtor's bank account)); In re Frazier, 116 B.R. 675 (Bankr. W.D. Wis. 1990) (exempt disability benefits check deposited into bank account with other exempt funds retained exempt status; benefits were "readily identifiable").

Next, the North Dakota statutes at issue, N.D.C.C. §§ 28-22-18 and 32-09.1-03, do not provide a time limitation or look-back period for the exemption. Neither the North Dakota Supreme Court nor this Court has addressed the issue of when, and under what circumstances, the exempt character of wages is lost. The Court is therefore left to reach a sound result consistent with the broad policy considerations that weigh on the issue, and the Court rejects the trustee's suggestion that the passage of some arbitrary amount of time transmutes wages into a non-exempt asset. If the North Dakota legislature intended to limit the look-back period for exempt wages, it would have done so. Perhaps it should. Given the statutory silence on the matter, however, the Court concludes that the determination of whether wages remain wages after they are deposited into an account hinges on whether the wages can be traced and identified within the accounts.

In this case, Debtor's wages were deposited in the first instance into the checking account owned jointly with her non-debtor husband. Debtor's husband also deposited his wages into this account. This account also earns interest. Although the commingling of exempt wages with non-exempt assets does not necessarily preclude a tracing of exempt status to an appropriate portion of the common fund, the commingling will work to deny the exemption to the extent that tracing is no longer possible due to an inability to identify or separate the respective assets. In other words, a debtor cannot claim an exemption in commingled funds after an exempt source becomes incapable of identification or separation. The commingling of assets compels the Court to apply a calculation of the amount that assuredly derives from an exempt source. See In re Coolbaugh, 250 B.R. 162, 166-67 (Bankr. W.D.N.Y. 2000) (establishing a "rule of convenience" for the allocation of exempt status for wages commingled with other funds whereby withdrawals are deemed to derive first from exempt assets).

The balance in the checking account on the date of filing, May 29, 2008, was $476.25. The last deposit into the checking account prior to Debtor's bankruptcy filing was $532.00 on May 24, 2008. Debtor testified that the handwriting on the deposit slip is her husband's and that she does not know the source of the funds for the deposit. She does not argue that any of the May 24, 2008, deposit can be traced to her wages. No portion of the balance in the checking account can be traced to Debtor's wages because the balance on the date of filing was less than the amount of the last deposit into the account from a non-exempt source. Accordingly, Debtor may not claim her one-half interest in the balance in the checking account as exempt, and the trustee's objection to this exemption is sustained.

The money in Debtor's and her spouse's savings account derives from the couple's checking account. Debtor testified that she transfers money from the checking account to the savings account whenever there is a couple hundred extra dollars in the checking account after bills have been paid. The original source of the money in the savings account, however, cannot be identified with specificity. The money came from the wages of both Debtor and her husband as well as from interest from both the checking and savings accounts. The money in the savings account is commingled to the extent that it is impossible to separate and identify the portion directly attributable to Debtor's wages. As a result, Debtor may not exempt her one-half interest in the savings account, and the trustee's objection to this exemption is sustained.

Based on the foregoing, the trustee's objection to Debtor's claimed exemptions is, in all respects, SUSTAINED.

**SO ORDERED.**

Dated this October 16, 2008.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**